Case 4:23-cv-03702   Document 21   Filed on 11/20/24 in TXSD   Page 1 of 16

United States District Court
Southern District of Texas
**ENTERED**
November 21, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JESSICA M.,[1] § <br> *Plaintiff,* § <br> § <br> v. § <br> § <br> MARTIN O'MALLEY, § <br> COMMISSIONER OF THE SOCIAL § <br> SECURITY ADMINISTRATION, § <br> *Defendant.* § | Case No. 4:23-cv-3702 |

# MEMORANDUM AND ORDER

Plaintiff Jessica M. ("Plaintiff") filed this suit seeking judicial review of an administrative decision. Pl.'s Compl., ECF No. 1. Jurisdiction is predicated upon 42 U.S.C. § 405(g).[2] Plaintiff appeals from the decision of the Commissioner of the Social Security Administration ("the Commissioner") denying Plaintiff's claim for disability insurance benefits under Title II of the Social Security Act ("the Act"). Plaintiff filed a brief, which the Court construes as a motion for summary judgment, ECF No. 12, and the Commissioner filed a cross-motion for summary judgment, ECF No. 20. Plaintiff seeks an order rendering benefits or remand for further

---

[1] Pursuant to the May 1, 2018 "Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions" issued by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court uses only Plaintiff's first name and last initial.

[2] On December 15, 2023, based on the parties' joint consent, the case was transferred to this Court to conduct all proceedings pursuant to 28 U.S.C. § 636(c). Order, ECF No. 9.

consideration, arguing that the Administrative Law Judge ("ALJ") failed to properly analyze Plaintiff's fibromyalgia at Step Two. ECF No. 12. The Commissioner counters that substantial evidence supports the ALJ's decision. ECF No. 20. Based on the briefing, the record, and the applicable law, the Court finds that the ALJ failed to properly evaluate Plaintiff's fibromyalgia at Step Two. Therefore, Plaintiff's motion for summary judgment is granted, the Commissioner's cross-motion is denied, and this case is remanded to the Commissioner.

I.  **BACKGROUND**

Plaintiff is 34 years old. R. 86.[3] Plaintiff attended some college, and previously worked as a receptionist and a licensed practical nurse ("LPN"). R. 89, 93. Plaintiff alleges a disability onset date of August 31, 2019. R. 18, 86. Plaintiff claims to suffer from physical limitations. R. 86.

On June 29, 2021, Plaintiff filed an application for disability insurance benefits under Title II of the Act.[4] R. 16, 200–01. Plaintiff based her application on

---

[3] "R." citations refer to the electronically filed Administrative Record, ECF No. 10.

[4] For Plaintiff's disability insurance benefits, the relevant period is August 31, 2019—Plaintiff's alleged onset date—through December 31, 2022—Plaintiff's last insured date. R. 18. The Court will consider medical evidence outside this period to the extent it demonstrates whether Plaintiff was under a disability during this timeframe. *See Williams v. Colvin*, 575 F. App'x 350, 354 (5th Cir. 2014); *Loza v. Apfel*, 219 F.3d 378, 396 (5th Cir. 2000).

primary immune deficiency,[5] inappropriate sinus tachycardia,[6] chronic pancreatitis.[7] R. 86. The Commissioner denied Plaintiff's claim initially, R. 86–103, and on reconsideration. R. 121–30.

An administrative hearing was held before an ALJ where Plaintiff was represented by an attorney. Plaintiff and a vocational expert ("VE") testified. R. 42–84. The ALJ issued a decision finding Plaintiff not disabled and denied his request for benefits.[8] R. 13–33. The Appeals Council denied Plaintiff's request for review,

---

[5] Primary immunodeficiency disorders — also called primary immune disorders or primary immunodeficiency — weaken the immune system, allowing infections and other health problems to occur more easily. https://www.mayoclinic.org/diseases-conditions/primary-immunodeficiency/symptoms-causes/syc-20376905 (last visited on September 19, 2024).

[6] Inappropriate sinus tachycardia (IST) occurs when the heart beats very quickly without a good reason. https://www.cedars-sinai.org/health-library/diseases-and-conditions/i/inappropriate-sinus-tachycardia.html (last visited on September 19, 2024).

[7] Chronic pancreatitis is a progressive disorder associated with the destruction of the pancreas. https://pancreasfoundation.org/pancreas-disease/chronic-pancreatitis/ (last visited on September 19, 2024).

[8] An ALJ must follow five steps in determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4). The ALJ here determined Plaintiff was not disabled at step four. R. 24. At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity since her alleged onset date. R. 18 (citing 20 C.F.R. §§ 404.1571 *et seq*.). At step two, the ALJ found that Plaintiff has the following severe impairments: asthma, allergic rhinitis, endometriosis, and common variable immunodeficiency. R. 19 (citing 20 C.F.R. § 404.1520(c)). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in the regulations that would lead to a disability finding. R. 23 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). The ALJ then found that Plaintiff had the RFC to perform sedentary work as defined in 20 CFR § 404.1567(a), except she could occasionally climb ramps and stairs, balance, stoop, crouch, kneel, and crawl, had to avoid concentrated exposure to environmental irritants (such fumes, odors, dusts, and gases), poorly ventilated areas, chemicals, unprotected heights, and avoid concentrated use of moving machinery. R. 22. At step four, the ALJ determined that Plaintiff was able to perform past relevant work as a receptionist. R. 28 (citing 20 C.F.R. § 404.1565). The ALJ concluded that Plaintiff was not disabled. R. 28.

upholding the ALJ's decision to deny benefits. R. 3–8. Plaintiff appealed the Commissioner's ruling to this Court. ECF No. 1.

## II. STANDARD OF REVIEW

The Social Security Act provides for district court review of any final decision of the Commissioner that was made after a hearing in which the claimant was a party. 42 U.S.C. § 405(g). In performing that review:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing. The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive[.]

*Id.* Judicial review of the Commissioner's decision denying benefits is limited to determining whether that decision is supported by substantial evidence on the record as a whole and whether the proper legal standards were applied. *Id.*; *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001); *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotations omitted). It is "more than a scintilla but less than a preponderance." *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). The "threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154.

The Court weighs four factors to determine "whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of

4

treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history." *Conley-Clinton v. Saul*, 787 F. App'x 214, 216 (5th Cir. 2019) (citing *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995)).

A reviewing court may not reweigh the evidence in the record, try the issues *de novo*, or substitute its judgment for that of the Commissioner, even if the evidence preponderates against the Commissioner's decision. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). Even so, judicial review must not be "so obsequious as to be meaningless." *Id.* (quotations omitted). The "substantial evidence" standard is not a rubber stamp for the Commissioner's decision and involves more than a search for evidence supporting the Commissioner's findings. *Singletary v. Brown*, 798 F.2d 818, 822–23 (5th Cir. 1986); *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). Rather, a reviewing court must scrutinize the record as a whole, taking into account whatever fairly detracts from the substantiality of evidence supporting the Commissioner's findings. *Singletary*, 798 F.2d at 823. "Only where there is a 'conspicuous absence of credible choices or no contrary medical evidence' will we find that the substantial evidence standard has not been met." *Qualls v. Astrue*, 339 F. App'x 461, 464 (5th Cir. 2009) (quotation omitted).

5

### III. APPLICABLE LAW

#### A. Disability Insurance Benefits Under the Act.

The Act permits the payment of insurance benefits to persons who have contributed to the program and who suffer a physical or mental disability. 42 U.S.C. § 423(a)(1)(D). These payments are referred to as disability insurance benefits. Applicants must prove "disability" to qualify for benefits. *Id.* § 423(d)(1)(A).

"Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* A physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3). "The suffering of some impairment does not establish disability; a claimant is disabled only if he is 'incapable of engaging in any substantial gainful activity.'" *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (quoting *Milam v. Bowen*, 782 F.2d 1284, 1286 (5th Cir. 1987)).

#### B. The Shifting Burden of Proof.

The Act places the burden of establishing disability on the claimant. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). To be entitled to disability insurance

6

benefits, a claimant "must show that he was disabled on or before the last day of his insured status." *Ware v. Schweiker*, 651 F.2d 408, 411 (5th Cir. 1981).

The Commissioner applies a five-step sequential process to determine disability status. *Torres v. Colvin*, No. 4:13-cv-2571, 2014 WL 4064002, at *6 (S.D. Tex. Aug. 15, 2014). The claimant bears the burden of proof at the first four steps to establish that a disability exists. *Farr v. Astrue*, No. G-10-205, 2012 WL 6020061, at *2 (S.D. Tex. Nov. 30, 2012). The burden shifts to the Commissioner at step five to show that the claimant can perform other work. *Id.* The burden then shifts back to the claimant to rebut this finding. *Id.* If at any step in the process the Commissioner determines that the claimant is or is not disabled, the evaluation ends. *Id.*

## IV. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IS GRANTED.

Plaintiff argues that the ALJ erroneously analyzed whether Plaintiff's fibromyalgia was a medically determinable impairment. ECF No. 12 at 15. Specifically, the ALJ improperly dismissed Dr. Ko's evaluation of Plaintiff's tender points and did not meaningfully evaluate the 2010 ACR criteria, which requires repeated manifestations of six or more fibromyalgia symptoms, unlike the required eleven in the 1990 ACR criteria. ECF No. 12 at 17–18. The Commissioner contends that the ALJ properly considered Plaintiff's fibromyalgia and found it was not a medically determinable impairment. ECF No. 20 at 14. The Court agrees with Plaintiff.

## A. The ALJ Failed to Properly Analyze Plaintiff's Fibromyalgia at Step Two.

The second step in the five-step evaluation process requires ALJs to consider "the medical severity of [claimants'] impairment(s)." 20 C.F.R. § 404.1520(a)(4)(ii). Before this, the ALJ must decide whether claimants have a "medically determinable physical or mental impairment," because without a medically determinable impairment, the claimants are deemed nondisabled. *Id.* § 404.1520(c).

SSR 12-2p[9] delineates the process for determining whether a claimant's fibromyalgia is a severe medically determinable impairment. SSR 12-2p, 2012 WL 3104869 (July 25, 2012). Fibromyalgia is "a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months." *Id.* at *2.[10] SSR 12-2p requires evidence from a licensed "medical or osteopathic doctor," but the ALJ looks for evidence that aligns with a fibromyalgia diagnosis, rather than "rely[ing] upon the

---

[9] Social Security Rulings ("SSR") "are binding on all components of the Social Security Administration" and they "represent precedent final opinions and orders and statements of policy and interpretations that [the Social Security Administration] ha[s] adopted." *Davis v. Comm'r of Soc. Sec.*, No. 6:21CV288-KNM, 2022 WL 16559140, at *9 (E.D. Tex. Oct. 31, 2022) (quoting 20 C.F.R. § 402.35(b)(2)). "The Commissioner issued SSR 12-2p in 2012 to provide guidance on the evaluation of fibromyalgia." *Id.* (citing SSR 12-2p, 2012 WL 3104869 (2012)).

[10] Symptoms include muscle pain, irritable bowel syndrome, fatigue or tiredness, thinking or remembering problems, muscle weakness, headache, pain or cramps in the abdomen, numbness or tingling, dizziness, depression, constipation, pain in the upper abdomen, nausea, nervousness, chest pain, blurred vision, fever, diarrhea, dry mouth, itching, wheezing, Raynaud's phenomenon, hives or welts, ringing in the ears, vomiting, heartburn, oral ulcers, loss of taste, change in taste, seizures, dry eyes, shortness of breath, loss of appetite, rash, sun sensitivity, hearing difficulties, easy bruising, hair loss, frequent urination, or bladder spasms. *Id.* at *3 n.9.

physician's diagnosis alone," and considers whether the physician reviewed the claimant's medical history, conducted a physical exam, and assessed the claimant's symptoms over time. *Id.* at *2.

SSR 12-2p outlines two tests: the 1990 American College of Rheumatology ("ACR") Criteria for the Classification of Fibromyalgia ("1990 Test") and the 2010 ACR Preliminary Diagnostic Criteria ("2010 Test"). *Id.* Both involve three factors, sharing the first and third factors: a "history of widespread pain" and "[e]vidence that other disorders[11] that could cause the [fibromyalgia] symptoms . . . were excluded." *Id.* at *2–3. For the second factor, the 1990 Test requires evidence of "[a]t least 11 positive tender points on physical examination," while the 2010 Test requires evidence of "[r]epeated manifestations of six or more symptoms . . ., especially manifestations of fatigue, cognitive or memory problems, waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome." *Id.* at *3 (footnotes omitted). A claimant must satisfy at least one of these two tests to show that her fibromyalgia is a medically determinable impairment. *Campbell v. Saul*, No. 2:21-CV-00010, 2022 WL 17729261, at *14–15 (S.D. Tex. Aug. 10, 2022),

---

[11] "Some examples of other disorders that may have symptoms or signs that are the same or similar to those resulting from [fibromyalgia] include rheumatologic disorders, myofascial pain syndrome, polymyalgia rheumatica, chronic Lyme disease, and cervical hyperextension-associated or hyperflexion-associated disorders." *Moreno v. Comm'r of Soc. Sec. Admin.*, No. EP-22-CV-358-KC, 2023 WL 6621582, at *7 (W.D. Tex. Oct. 11, 2023) (quoting SSR 12-2p, 2012 WL 3104869, at *3 n.7). "Methods of ruling out such other disorders 'may include imaging and other laboratory tests (for example, complete blood counts, erythrocyte sedimentation rate, anti-nuclear antibody, thyroid function, and rheumatoid factor).'" *Id.* (quoting SSR 12-2p, 2012 WL 3104869, at *3).

9

*adopted*, 2022 WL 17722666 (S.D. Tex. Aug. 25, 2022); *Hills v. Comm'r of Soc. Sec.*, No. 17-46-RLB, 2018 WL 1914291, at *3 (M.D. La. Apr. 23, 2018).

Here, the ALJ detailed Dr. Ko's examination findings over several months, including multiple tender points, widespread pain, nonrestorative sleep, and chronic insomnia, and noted: "[t]hough Dr. Ko was of the impression that claimant has fibromyalgia, the identification of six tender points is not enough to establish fibromyalgia under SSR 12-2p." R. 20–21.[12] Based on the above, the ALJ dismissed Plaintiff's fibromyalgia as not medically determinable. *Id.* But, under the 2010 Test, "[r]epeated manifestations of *six* or more symptoms" satisfies the second factor. SSR 12-2p (emphasis added). Arguably, the manifestations of six symptoms over a couple of months, such as is described above, could meet this factor, but the ALJ did not consider that in his written opinion. Moreover, the ALJ did not discuss the first and third factors: a history of widespread pain and evidence that other disorders that could cause the symptoms were excluded. *See* R. 20–21.[13] Accordingly, the ALJ failed to conduct the necessary analysis under SSR 12-2p, which is error. *See*

---

[12] Dr. Ko's examination notes from October 20, 2019, documented as ongoing problems: acute and chronic abdominal pain, ANA positive, breast pain, chronic pancreatitis, constipation, diarrhea, dysphasia, fatigue, fibrocystic breast disease, fibromyalgia, heart burn, IBS with constipation, loss of appetite, nausea and vomiting, rectal bleeding. R. 772. On December 1, 2019, Dr. Ko listed the same issues as ongoing problems. R. 775. Most of these ongoing problems are symptoms of fibromyalgia. *See* footnote 10.

[13] Notably, the Commissioner's motion for summary judgment does not respond to the ALJ's failure to discuss these factors, but instead discusses Plaintiff's medical records related to her fibromyalgia diagnosis and attempts to undertake the missing SSR 12-2p analysis. *See* ECF No. 20 at 13–16.

*Moreno v. Comm'r of Soc. Sec. Admin.*, No. EP-22-CV-358-KC, 2023 WL 6621582, at *6–8 (W.D. Tex. Oct. 11, 2023) (finding error where ALJ did not discuss whether the claimant met the first and third factors of SSR 12-2p, and inaccurately described the record regarding the claimant's symptoms).

**B.     The ALJ's Error was Harmful.**

If an ALJ determines that a claimant suffers from one or more severe medically determinable impairments, then he moves on in the evaluation process. *See* 20 C.F.R. § 404.1520(a)(4). At Step Three, an ALJ considers whether the severity of a claimant's medically determinable impairment "meets or equals one of" various impairments enumerated in the statute. *Id.* § 404.1520(a)(4)(iii). If the severity of a claimant's impairment matches the severity of an enumerated impairment, the claimant is statutorily disabled. *Id.*; *see also* § 404.1520(d).

If, however, a claimant's impairments do not match any statutory impairments, the ALJ assesses the claimant's RFC, determining the most the claimant can still do despite her limitations. *Id.* § 404.1545(a)(1). Then, using the RFC, the ALJ decides at steps four and five whether the claimant can engage in past relevant work or other types of work. *Id.* § 404.1520(a)(4)(iv)–(v). In determining a claimant's RFC, an ALJ can only factor in symptoms objectively arising from medically determinable impairments, *id.* § 404.1545(a)(2)—asserted impairments found to not be medically determinable "will not be found to affect [a claimant's]

ability to do basic work activities," *id.* § 404.1529(b). If a claimant's RFC, considered along with her age, education, and work experience, renders her unable to work, then she is disabled and eligible for benefits. *Id.* § 404.1520(a)(4)(v).

Here, the ALJ found Plaintiff had the following severe medically determinable impairments: asthma, allergic rhinitis, endometriosis, and common variable immunodeficiency. R. 19. At the same time, the ALJ erroneously decided Plaintiff's fibromyalgia did not meet the requirements for a medically determinable impairment. R. 20–21. At Step Three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a qualifying statutory disability. R. 22. Then, the ALJ determined Plaintiff's RFC, noting that when a medically determinable physical or mental impairment "could reasonably be expected to produce [Plaintiff's] pain or other symptoms," the ALJ would "evaluate the intensity, persistence, and limiting effects of [Plaintiff's] symptoms to determine the extent to which they limit [Plaintiff's] work-related activities." R. 22. However, the ALJ also stated that Plaintiff's statements concerning "the intensity, persistence, or functionally limiting effects of pain or other symptoms" would only be considered so far as they were supported by objective medical evidence. R. 22. Using this analytical framework, the ALJ found that although Plaintiff's "medically determinable impairments could reasonably be expected to cause some of [her] alleged symptoms," her "statements concerning the

intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." R. 23. The ALJ then reviewed Plaintiff's medical history and found that she had a sedentary RFC. R. 22.

The ALJ's failure to properly analyze Plaintiff's fibromyalgia was a harmful error for two reasons. First, if the ALJ found Plaintiff's fibromyalgia was a medically determinable impairment, then the ALJ would have considered at Step Three whether the severity of Plaintiff's fibromyalgia equaled that of a statutorily listed disability, which could automatically establish Plaintiff to be disabled. *See Moreno*, 2023 WL 6621582, at *3 (citing *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (finding that "[b]y the explicit terms of [42 U.S.C. § 405], the ALJ was required to discuss the evidence offered in support of [the] claim for disability" at step three and explain why a claimant was found not disabled)). Other courts have found it is reversible error to not consider whether a medically determinable diagnosis of fibromyalgia qualifies a claimant for benefits because a claimant can establish fibromyalgia is a qualifying disability at Step Three. *See id.* (citing *Audler*, 501 F.3d. at 448–49; *McCurry v. Kijakazi*, No. 1:21-CV-731-RP-SH, 2022 WL 3135753, at *4 (W.D. Tex. Aug. 5, 2022), *adopted*, 2022 WL 17732696 (W.D. Tex. Sept. 26, 2022) ("The ALJ's consideration of Plaintiff's fibromyalgia could have altered his determination at step three and in subsequent steps. Accordingly, the ALJ's error was

not harmless."); *Waterman v. U.S. Comm'r, Soc. Sec. Admin.*, No. 15-CV-02699, 2017 WL 1238042, at *11 (W.D. La. Jan. 18, 2017), *adopted*, 2017 WL 1238038 (W.D. La. Mar. 30, 2017) ("Because the ALJ failed to compare the claimant's symptoms with those of relevant listings, remand is required.")). Therefore, by failing to properly analyze Plaintiff's fibromyalgia and finding it was not medically determinable, the ALJ foreclosed the possibility of finding it was a basis for disability at Step Three. *See id.*

Second, the ALJ's error prevented the ALJ from considering whether Plaintiff's fibromyalgia provided an objective medical basis for her statements about the severity of her symptoms. The ALJ only gave weight to Plaintiff's subjective "statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms" to the extent they were "substantiated by objective medical evidence." R. 22; *see also* 20 C.F.R. § 404.1529(b) ("[A claimant's] symptoms, such as pain, fatigue, shortness of breath, weakness, or nervousness, will not be found to affect your ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment(s) is present."). Prior to this, the ALJ determined that Plaintiff's fibromyalgia was not medically determinable. R. 20 – 21. It necessarily follows that the RFC determination—which was predicated upon the finding that Plaintiff's statements about the intensity and severity of her symptoms were inconsistent "with the medical evidence," R. 23—

14

was skewed by the ALJ's inability to consider whether Plaintiff's fibromyalgia provided an objective basis for Plaintiff's statements about the severity of her symptoms. *See Moreno*, 2023 WL 6621582, at *4 (citing *Patrick v. Comm'r of Soc. Sec. Admin.*, No. 3:20-CV-333-TSL-MTP, 2022 WL 2813751, at *4 (S.D. Miss. June 30, 2022),*adopted*, 2022 WL 2813047 (S.D. Miss. July 18, 2022) (finding reversible error when an ALJ failed to evaluate a claimant's fibromyalgia at step two because "[a]ll medically determinable impairments, including [nonsevere] impairments, must be taken into account in determining a claimant's RFC"); *Jones v. Astrue*, 821 F. Supp. 2d 842, 850 (N.D. Tex. 2011) (noting it is reversible error when an ALJ "explicitly rejects one or more of the claimant's impairments . . . and proceeds to the later steps of the sequential analysis only with respect to other claimed impairments"). By erroneously analyzing Plaintiff's fibromyalgia and subsequently finding it not medically determinable, the ALJ materially altered the rest of the disability analysis. *See id.*

Accordingly, it is entirely plausible "that a different administrative conclusion would have been reached" if the ALJ properly considered whether Plaintiff's fibromyalgia was medically determinable. *Id.* (citing *Keel v. Saul*, 986 F.3d 551, 556

(5th Cir. 2021) (citing *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003) (per curiam))). The ALJ's error was harmful.[14]

## V.     CONCLUSION

It is therefore **ORDERED** that Plaintiff's motion for summary judgment, ECF No. 12, is **GRANTED**, and the Commissioner's cross-motion for summary judgment, ECF No. 20, is **DENIED**. The Commissioner's determination denying Plaintiff disability benefits is **VACATED** and this case is **REMANDED** for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

Signed at Houston, Texas, on November 20, 2024.

_____
**Dena Hanovice Palermo**
**United States Magistrate Judge**

---

[14] Plaintiff also argues that the ALJ failed to account for Plaintiff's mental impairments in his RFC determination and the corresponding finding that Plaintiff could perform semi-skilled work. ECF No. 12 at 9. Because the Court finds remand is appropriate on Plaintiff's first point of error, it does not address Plaintiff's remaining argument. These issues can be addressed on rehearing before the ALJ.